Somo Lumber Company, Respondent, vs. Lincoln County
and another, Appellants.

*April 9 — April 30, 1901.*

*Municipal corporations: General city charter law: Cities under special
charters: What cities may reorganize under general law: Taxa-
tion: Statutes: Constitutional law.*

1. The general city charter law (ch. 326, Laws of 1889) provided that
any city "*now incorporated*" under the laws of this state might
adopt said act in the manner therein prescribed, but made no

Somo Lumber Co. vs. Lincoln County.

, provision for its adoption by a city thereafter incorporated under a special charter. Sec. 72, ch. 312, Laws of 1893, amendatory thereof, provided that any city, "*now organized*" under a special charter, might, by ordinance, adopt the provisions of any special chapter, section, or subdivision of a section of that act, in addition to, or in lieu of, the provision of its special charter, and that when so adopted such ordinance should operate to that extent as an amendment of such special charter, but that no city should be deemed to have surrendered its special charter and become organized under such act until it should have adopted all its provisions in full. *Held*, that a city organized in 1891 under a special charter had the power to adopt the general city charter law in 1896, and that after it had taken such action taxes levied in excess of the amount authorized by said law were invalid.

2. The provision of the general city charter law (sec. 925–142a, Stats. 1898) limiting the amount which cities operating thereunder may raise by taxation in any one year is not void for uncertainty.

3. The restriction on taxation contained in said sec. 925–142a, Stats. 1898, must be deemed to have been made pursuant to the mandate of sec. 3, art. XI, Const., empowering the legislature, and charging it with the duty, to provide for the organization of cities and incorporated villages and to restrict their power of taxation so as to prevent abuses in assessments and taxation.

[4. Whether such provision is invalid in so far as it restricts the power of a city to levy taxes in excess of three per cent. to pay debts contracted prior to its adoption of the general charter law, not decided.]

[5. Whether the question as to the violation of such restriction can be raised by a taxpayer, or whether it can only be properly raised by a bondholder, not decided.]

APPEAL from a judgment of the circuit court for Lincoln county: W. C. SILVERTHORN, Circuit Judge. *Affirmed.*

For the appellants the cause was submitted on the briefs of *Curtis, Reid, Smith & Curtis,* and for the respondent on that of *John Barnes.*

Appellants contended, *inter alia,* that the city of Tomahawk had no power to adopt the general city charter law, and consequently was not subject to the limitation therein contained on the power of taxation. 16 Am. & Eng. Ency. of Law, 920; 19 id. 394; *Clark v. Lord,* 20 Kan. 396; *Pike*

*v. Kennedy,* 15 Oreg. 420; *Welch v. Wilcox,* 101 Mass. 162; *Quinn v. Hardenbrook,* 54 N. Y. 83; *Howard v. Mansfield,* 30 Wis. 75; *Att'y Gen. v. Eau Claire,* 37 Wis. 400; *Kuhl v. C. & N. W. R. Co.* 101 Wis. 48; *Wentworth v. Racine Co.* 99 Wis. 30; Cooley, Const. Lim. (5th ed.), 139, 240, 253, 255; *Slinger v. Henneman,* 38 Wis. 509, 510; *Ryan v. Outagamie Co.* 80 Wis. 337; Tiedeman, Mun. Corp. § 88; *Laver v. Mc-Glachlin,* 28 Wis. 364; *Baker v. State,* 69 Wis. 32, 37; *In re Burke,* 76 Wis. 357; *Quint v. Merrill,* 105 Wis. 407; *Herman v. Oconto,* 100 Wis. 392. The limitation in sec. 925—142a, Stats. 1898, is void for uncertainty and is also unconstitutional. *Oconto W. S. Co. v. Oconto,* 105 Wis. 86; *U. S. v. New Orleans,* 98 U. S. 381; sec. 9, art. I, and sec. 1, art. XIV, Const.; *Anderton v. Milwaukee,* 82 Wis. 279, 284; *Durkee v. Janesville,* 28 Wis. 464; *Hincks v. Milwaukee,* 46 Wis. 559; *Janesville v. Carpenter,* 77 Wis. 303; *Wilder v. C. & W. M. R. Co.* 70 Mich. 382; 23 Am. & Eng. Ency. of Law, 228; *State v. Partlow,* 49 Am. Rep. 652; *Chaffee's Appeal,* 56 Mich. 244; *In re Hendricks,* 60 Kan. 796. Assuming that the city of Tomahawk was subject to the limitation in sec. 925—142a, Stats. 1898, and that the same was a valid limitation, nevertheless it had power to levy taxes in excess of that limitation to pay debts incurred prior to the adoption of the general charter by the city. Cooley, Const. Lim. (5th ed.), 356; 25 Am. & Eng. Ency. of Law, 586; *State ex rel. Hasbrouck v. Milwaukee,* 25 Wis. 122; *Brodie v. McCabe,* 33 Ark. 690; *Second Ward S. Bank v. Schranck,* 97 Wis. 250; *Peninsular L. & C. Works v. Union O. & P. Co.* 100 Wis. 488; *Eau Claire Nat. Bank v. Macauley,* 101 Wis. 304; *Van Hoffman v. Quincy,* 4 Wall. 535; *Murray v. Charleston,* 96 U. S. 432; *Louisiana v. New Orleans,* 102 U. S. 203; *Wolff v. New Orleans,* 103 U. S. 358; *Gunn v. Barry,* 15 Wall. 610; *Edwards v. Kearzey,* 96 U. S. 595; *Shapleigh v. San Angelo,* 167 U. S. 646; *Heath & M. Mfg. Co. v. Union O. & P. Co.* 83 Fed. Rep. 776.

CASSODAY, C. J. This action was commenced April 27, 1898, to set aside the taxes of 1897 on the plaintiff's real estate, described — situated in the city of Tomahawk — and to restrain the collection thereof. Issue being joined and trial had, the court found as matters of fact, in effect, that the city of Tomahawk was organized under ch. 58, Laws of 1891; that in February, 1896, the common council of the city adopted an ordinance purporting to ordain that ch. 326, Laws of 1889, as amended by ch. 312, Laws of 1893, be adopted in lieu of its special charter; that in February, 1896, the governor issued to the city letters patent under the great seal of the state, reciting the facts, defining the boundaries of the city, and purporting to constitute the same a municipal corporation governed by the provisions of the general charter law then in force and now incorporated in ch. 40a, Stats. 1898; that from and after such adoption the people and officers of the city acted pursuant to the general charter law; that the plaintiff's property, described, was subject to assessment, and was assessed in the city for that year; that the assessor and board of review exercised reasonable diligence, and did not intentionally discriminate against any taxpayer, nor intentionally omit from assessment any known taxable property in making up the assessment roll for that year; that the total assessed valuation of the property in the city was $373,674; that there was levied thereon a tax of five per cent., aggregating $18,683.70, of which amount $1,980 was levied to pay waterworks bonds of the city, and interest on the same, $2,328 to pay railroad bonds of the city, and interest thereon, $7,473.48 for the support of city schools, $5,460.43 for state and county taxes, and $1,441.79 for general city purposes; that the two items to pay bonds and interest, aggregating $4,308, were levied to pay legal indebtedness of the city created and existing prior to April 1, 1896; that the plaintiff had not paid or tendered the taxes, or any part thereof, levied against its

property. And as conclusions of law the court found, in effect, that the assessment was valid; that in February, 1896, the city had power to adopt, and did legally adopt, as its charter the general city charter of this state included in ch. 326, Laws of 1889, and subsequent amendments; that the limitation on the power of taxation contained in the general charter law now embodied in sec. 925—142a, Stats. 1898, is a valid limitation, and the same was in effect in the city of Tomahawk in the year 1897, and prevented the levy in the city for all purposes of any greater tax than three per cent. of the assessed valuation of the city; that all taxes carried out against the plaintiff's property in excess of three per cent. of the assessed valuation thereof were levied without authority in law; that the balance of the taxes against the plaintiff's property are valid and legally chargeable to the same; that the amount legally chargeable was $390, together with the usual five per cent. collector's fees, and interest on the total amount at six per cent. per annum from January 1, 1898; that the plaintiff was entitled to judgment setting aside the taxes of 1897 upon its property, and restraining the collection thereof, etc., on condition that it pay into the court, for the use and benefit of the defendant *Lincoln County* within thirty days from the filing of the findings, the sum of $390, with five per cent. collector's fees, and interest on the combined sum at the rate of six per cent. per annum from January 1, 1898; that on failure of the plaintiff to pay such sum as required the defendants will be entitled to judgment dismissing the complaint. From the judgment entered thereon accordingly the defendants bring this appeal.

1. The important question in this case is whether the trial court was right in holding that the city of Tomahawk had power to adopt the general charter law in February, 1896. The original general charter law is ch. 326, Laws of 1889. By the first section of that act the cities of this

state *then existing* or that might thereafter be created un-
der the provisions of *that act* were divided into three classes,
as therein stated.   The second and third sections of the act
read as follows:

"No city *now incorporated* under the laws of this state
shall be affected by the provisions of this act, unless such
city shall adopt the same for its government in the manner
hereinafter provided."   "When the common council of any
city *now incorporated*, by a three-fourths vote of all the
members thereof shall have adopted this act for its govern-
ment, and a patent shall have been issued as hereinafter
provided, such city shall cease to exist as a corporation un-
der the charter and laws creating such corporation or
adopted for its government, and shall constitute a munici-
pal corporation under this act, and shall be governed by its
provisions."

Then, after prescribing the manner of such adoption, it is
provided therein that:

"Whenever this act shall be adopted by a city *now in-
corporated*, the officers of such city shall continue in office
. . . until their successors are elected and qualified."   Sec. 6.

Then, after prescribing the manner of incorporation of
cities under such general charter act, it provides for the issu-
ance of a patent therefor, and, among other things, declares
that:

"Any patent issued and recorded in the manner herein
provided, the record thereof or a certified copy of such rec-
ord, shall be conclusive evidence in all courts and places of
the due incorporation of the city mentioned in said patent,
and of all the facts therein recited."   Sec. 13.

That act went into effect April 12, 1889.   There is no
question but that the provisions of the act mentioned gave
ample authority to any city then existing under a special
charter to adopt such general charter, but it obviously gave
no such authority to any city which might thereafter be in-
corporated and organized under a special charter.   This, no
doubt, was owing to the fact that the same legislature which
passed such general charter law also proposed the constitu-

tional amendment, prohibiting the legislature "from enacting any special or private laws . . . for incorporating any city, . . . or to amend the charter thereof." Subd. 9, sec. 31, art. IV, Const.; Laws of 1889, p. 764. With such pending amendment and the existence of such general charter law, it was obviously supposed that no subsequent legislature would incorporate any city by a special charter. Nevertheless, the next legislature did incorporate the city of Tomahawk by special charter. Ch. 58, Laws of 1891. At the same session of the legislature several other cities were incorporated by special charters, and the special charters of numerous cities then existing were in that year amended, and yet the same legislature agreed to such proposed amendment to the constitution. Laws of 1891, pp. 731, 732. Such proposed amendment was ratified by the electors of the state in November, 1892. The question recurs whether any statute was subsequently enacted which authorized such cities so incorporated by special charters in 1891 to adopt the general charter law. That law was amended in many important provisions by ch. 312, Laws of 1893. The first section of this last-named act amended the first section of the general charter law so that the cities of the state *then existing* or that might be created under the provisions of that act should be divided into four classes as therein stated. But that act did not expressly undertake to amend the provisions of secs. 2 and 3 of ch. 326, Laws of 1889, above quoted; nor did it expressly authorize the cities incorporated by special charters in 1891 to adopt such general charter law. A new provision in that act, relating to the payment of the proportionate share of the joint indebtedness of a town and a city situated therein, is made applicable to any city then incorporated under a special charter, and so jointly indebted. Sec. 1a, ch. 312, Laws of 1893. The act also amended sec. 13, ch. 326, Laws of 1889, but continues the provision of that section quoted above. Sec. 6, ch. 312, Laws

of 1893. Sec. 267, ch. 326, Laws of 1889, authorized all cities then "existing under any special law" to "exercise all the powers contained" in that "act relating to the issuing of improvement bonds to pay for special assessments." By sec. 72, ch. 312, Laws of 1893, that section was amended so as to declare, among other things, that:

"Any city now organized under a special charter, may adopt the provisions of any special chapter, section or subdivision of any section of this act, and may exercise any power or franchise hereby conferred upon cities organized under this act, in addition to, or in lieu of, the provisions of its special charter and the powers and franchises therein specified by an ordinance adopted for that purpose by a three-fourths vote of all the members of the common council elect, and when adopted as herein prescribed, such ordinance shall operate to that extent as an amendment of such special charter. . . . No city, however, shall be deemed to have surrendered its special charter and organized under this act until it shall have adopted all of its provisions in full, as hereinbefore provided."

Thus the city of Tomahawk, as well as any other city created by special charter in 1891, was, by that amendment, expressly authorized to adopt "any special chapter, section or subdivision of any section" of that act, and to "exercise any power or franchise" thereby conferred upon cities organized thereunder. Unless such express authority to so adopt any portion of the general charter law was regarded broad enough to empower any city then organized under a special charter to adopt the entire general charter law, there was no necessity for declaring therein that no such city should "be deemed to have surrendered its special charter" until it should have "adopted all" the provisions of the general charter law. The implication may fairly be indulged that, in case such city should adopt all the provisions of the general charter law, then it should thereby "be deemed to have surrendered its special charter." Since such city was expressly authorized to adopt chapter after chapter until

the whole should be included, there would seem to be no want of power to adopt the whole in the first instance. A grant of power clearly implied is just as effective as a grant of power expressly declared. Any other construction would defeat the object of the general charter law as to all cities incorporated by special charters in 1891. The general purpose of the enactment is to be considered in construing its provisions. Thus it has been held by the highest court in England that: "Where the main object and intention of a statute are clear, it must not be reduced to a nullity by the draftsman's unskilfulness or ignorance of law, except in the case of necessity, or the absolute intractability of the language used." *Salmon v. Duncombe,* 11 App. Cas. 627. "Even penal statutes are not to be construed so strictly as to defeat the obvious intention of the legislature." *Manitowoc Co. v. Truman,* 91 Wis. 12. In the language of the late Justice FIELD:

"All laws should receive a sensible construction. General terms should be so limited in their application as not to lead to injustice, oppression, or an absurd consequence. It will always, therefore, be presumed that the legislature intended exceptions to its language which would avoid results of this character. The reason of the law, in such cases, should prevail over its letter." *U. S. v. Kirby,* 7 Wall. 486, 487.

We must hold that the city had the power to adopt the general charter law in 1896, and did so.

2. It follows that ch. 199 of the Laws of 1895, amending the general charter law, as the same was amended by sec. 3, ch. 138, Laws of 1897, and now found in sec. 925—142a of the Statutes of 1898, was applicable to the city of Tomahawk in 1897, when the taxes in question were levied. In that statute it is provided that:

"A tax levied for any one year for municipal purposes, together with the tax required to be levied for state, county, county school and school district purposes, and for delinquent taxes for the preceding year, shall not exceed the amount of three per cent. of the assessed value of real and personal property of the city in that year."

Somo Lumber Co. vs. Lincoln County.

The later amendment increasing such per cent. is not here involved, Ch. 262, Laws of 1899.

Counsel for the defendants contend that sec. 925—142*a* is unconstitutional, and also void for uncertainty. We perceive no uncertainty in the language employed. The constitution of this state expressly gave to the legislature power, and charged it with the duty, "to provide for the organization of cities and incorporated villages, and to restrict their power of taxation so as to prevent abuses in assessments and taxation." Sec. 3, art. XI. Const. The restriction in question must be deemed to have been made pursuant to such mandate. Counsel contends that, assuming that the city was subject to such limitation, and that the same was valid, nevertheless it was inoperative, so far as it restricted the power of the city to levy taxes in excess of three per cent. to pay debts contracted prior to the adoption of the general charter law. It is enough to say that according to the findings, above set forth,— which are verities in the case,— the aggregate amount of the state tax, and the county tax, and waterworks bonds and interest, and railroad bonds and interest is considerably less than the three per cent. authorized, and hence the question suggested is not involved in the case. Whether a taxpayer, as here, can properly raise such question, or whether it can only be properly raised by the bondholder, as argued by counsel, may be an important question; but, as it is not here involved, we decline to consider it.

*By the Court.*— The judgment of the circuit court is affirmed.