## McFARLAND v. UNITED STATES.

Circuit Court of Appeals, Sixth Circuit.
June 8, 1927.

No. 4732.

**1. Aliens ⊗⟞59—Indictment charging alien with personating another by presenting citizenship papers did not charge offense under law relative to immigration visas or permits (Immigration Act 1924, § 22, cl. [b] [1], being U. S. C. tit. 8, § 220; Comp. St. § 4289¾k).**

Indictment charging alien with personating another, by presenting first citizenship papers as means of identification to examining officer, *held* not to charge an offense under Immigration Act 1924, § 22, cl. (b) (1), being U. S. C. tit. 8, § 220 (Comp. St. § 4289¾k), in view of fact, as established by subsections therein, that Congress did not intend to include any act not pertaining to visas or permits.

**2. Criminal law ⊗⟞13—Statute making act criminal must leave no reasonable doubt as to Legislature's intention.**

Words of a statute making certain act criminal must be such as to leave no reasonable doubt as to intention of Legislature.

In Error to the District Court of the United States for the Eastern District of Michigan; Charles C. Simons, Judge.

Matthew McFarland was convicted of a violation of the Immigration Act, and he brings error. Reversed, and defendant discharged.

O. Guy Frick, of Detroit, Mich., for plaintiff in error.

David Polasky, of Detroit, Mich. (Delos G. Smith, of Detroit, Mich., on the brief), for the United States.

Before DENISON and MOORMAN, Circuit Judges, and GORE, District Judge.

DENISON, Circuit Judge. The facts attending this prosecution are fully stated in the accompanying case of John McFarland (No. 4731) 19 F.(2d) 805. This defendant, Matthew McFarland, was charged with the violation of clause (b) (1) of section 22 of the Immigration Act of 1924 (43 Stat. p. 165; U. S. Code, tit. 8, § 220 [Comp. St. § 4289¾k]). The critical words of the act, as the prosecution here seeks to apply them are: "(b) Any individual who, (1) on ap-

plying for an immigration visa or permit, or for admission to the United States, personates another, * * * or evades or attempts to evade the immigration laws by appearing under an assumed or fictitious name."

[1] The indictment is most inartificial, to say the least. It does not allege that Matthew McFarland was an alien, or that he was applying for admission or was attempting to evade the immigration laws. It describes Matthew as "late of the present government of Ireland." If it may be assumed that the word "subject" or "citizen" is inadvertently admitted, still the alienage would not appear, save inferentially. It charges that he "did unlawfully, willingly, knowingly, and falsely personate a certain person, to wit, Richard Clements, by presenting the first citizenship papers of the said Richard Clements as a means of identification to the examining officer, Inspector Basil Pappas, representing to the said officer that he was a resident of the United States." From all this one may infer, with more or less certainty, the fundamental fact that Matthew was applying for admission to the United States, and did, when so applying, personate another; but liability to a fine of $10,000 and imprisonment for five years ought not to rest on so shaky a foundation.

However, as in the John McFarland case, we go to the question which has been argued. Without doubt, if this special section (b) (1) is read by itself, Matthew's conduct, as shown by the proof, is within its language. He was applying for admission, and he did personate another, though very briefly and followed by a prompt repentance; and this personation was made in a manner intended to help him get in, unavailing as it was, and as he should have known it would be. In spite of this verbal possibility, we must conclude that it was not the intent of this special section to reach such conduct as this. The successive Immigration Acts of 1903 (32 Stat. 1213), 1907 (34 Stat. 898), and 1917 (Comp. St. §§ 959, 960, 4289¼a–4289¼u) do not attempt to punish any personation of another by the one applying for admission, unless he gives false testimony before the inspector or the board. By these laws, no document of any kind had been required from the immigrant.

The Act of November 10, 1919 (41 Stat. 353 [Comp. St. §§ 7628i–7628m]), for the first time required, if proclaimed by the President, that no alien should enter without such passport or visa as shown be specified, and that to use or furnish any false paper of this class should be punished. The Act

of May 19, 1921 (42 Stat. 5 [Comp. St. §§ 4289½–4289½dd]) first provided for the quota limitations. The Act of May 26, 1924 (43 Stat. 153), revised the quota limitations, and first provided a system of enforcing these limitations by immigration visas or permits. It prescribes in detail how such visas should be issued by consular officers and what they shall contain, and treats also of permits and of the limitations of visas coming from the quota limitations. It is divided into successive headings, indicating the subject treated in each section or group of sections. Section 22 is headed "Offenses in Connection with Documents." Subsection (a), in its six separately numbered clauses, pertains wholly to visas or permits, and specifies six offenses in connection therewith. Subsection (c) also applies solely to documents required by the Immigration Law or regulations thereunder. Subsection (b) has two clauses, (1) and (2). Clause (2) refers solely to visas or permits. Clause (1), above quoted, is also limited to offenses in connection with a visa or permit, except only for the possible effect of the clause "or for admission to the United States."

Nine offenses are created by this section; eight of them are limited to the subject-matter of this statute. To say that the ninth, by this clause of possibly broader scope, makes a crime out of the personation of another, in a matter wholly disconnected with visas or permits, is to make a somewhat startling extension of the specific statute beyond its whole specific scheme and purpose; and, while such interpretation is verbally possible, it would not be, we think, in accordance with the accepted canons of construction. If we interpolate any words of connection with the subject-matter of the act, the provision becomes pertinent and consistent, as, for example, "when applying for immigration visa or permit or [using one] for admission to the United States, personates." Indeed, there need be no resort to implication or interpolation. The section headings are not those of a compiler, but are in the act itself.

This heading declares that section 22 relates to "Offenses in Connection with Documents." This must mean "the documents provided for by this act." This title limitation to such offenses is carried down into (b) (1) as fully as if it were repeated, and makes the clause say, "who, when applying for admission, in connection with the documents of this act personates." We have little doubt that this, and this only, was the intent of the act. Offenses plainly within the very language of a statutory prohibition have frequently been held not within its penalty.

"The reason of the law should prevail over its letter." To "obstruct or retard any mail carrier" does not include his lawful arrest and holding. U. S. Kirby, 7 Wall. 482, 19 L. Ed. 278. "Service of any kind" does not cover service as a minister of the gospel. Holy Trinity Church v. U. S., 143 U. S. 457, 12 S. Ct. 511, 36 L. Ed. 226. "Every Chinese person about to come to the United States" does not reach one who is about to come for the second time. Lau Ow Bew v. U. S., 144 U. S. 47, 12 S. Ct. 517, 36 L. Ed. 340.

[2] The words of the statute must be such as to leave no reasonable doubt as to the intention of the Legislature, U. S. v. Hartwell, 6 Wall. 385, 18 L. Ed. 830; and where there is any well-founded doubt as to any act being a public offense, it should not be declared such, Harrison v. Vose, 9 How. 372, 13 L. Ed. 179. To say the least, there is a well-founded doubt whether Congress intended by section 22 to include any act which did not pertain to a visa or permit.

Hence the indictment, at its best, charges no offense, and the judgment should be reversed, and the respondent discharged.